Good morning. May it please the court. My name is Michael Morgus, M-O-R-G-U-E-S-S, on behalf of Appellant John Ellins. I would like to reserve five minutes for rebuttal. It's always interesting when you break out these cases after having them sit on a shelf for about six months in between the briefing and oral argument and getting this different view of it. I'd like to address four points. The most pressing, I think, is whether Appellant's speech was a substantial motivating factor in the Chief's decision not to submit his post-certification for his 5% increase. And when you look at her claims, the Chief's claims, at first glance it looks like she has a legitimate reason for not submitting those. She claimed that he had pending a number of internal affairs investigations. One was that he had associated with a convicted felon. Another was a comment that he made about evacuees during the Sierra Madre fires. And another was that he had not arrested a suspect who had marijuana on him. And then there is also this issue of a potential pending criminal claim. So the Chief says that's why she did not submit the post-certification because the application requires her to certify that the applicant, the appellant, is of good moral character. That would seem to make sense. But then what happens is all of these disciplinary matters are sustained. He's given a 125-hour suspension for associating with a convicted felon. He's given a reprimand for the comment made about the evacuees. And then a 160-hour suspension for not arresting the suspect who had marijuana on him. And it would seem to me, under her principle, that that would only bolster her position that she could not submit this application because now that he's been found guilty of the allegations of misconduct, he certainly is not of good moral character. But still, she submitted it. So something doesn't add up there. She submitted it, and she says that she submitted it and not only gave him back pay to when she submitted it, but went back quite a number of months hoping to avoid this litigation. And it just seems to me that under the principles that she espoused for not signing it in the first place, she would have never signed it or submitted it. And so I think that that is enough for there to assert that that may be protectual reasons for not submitting the certification and that it really was in response to his protected speech. And I think a jury could find that. And for that reason, I think the holding in the district court is an error. How much money do you contend that Allen's lost as a result of the delay, Chief Deist's delay in signing the document? I don't know the exact amount. But is there some tangible amount of money that you're claiming? It would be several months at 5%. It would probably be less than $10,000. Okay. So, but this is for a period. He did get some back pay. So this is for which period precisely? The period between when he submitted it and when she finally gave him the retroactive pay. There's March, April, and May. Do you claim at all, do you make any claim that some of these, I guess particularly the referral to the district attorney of some alleged misconduct by Allen's was in retaliation for the speech as well? Yes, we allege that as well. The other side argued that because it was not in the pretrial conference order. We were forbidden from raising that. I don't necessarily agree with that. Did you ever seek to amend the pretrial conference order? No, it was not amended. The motion was brought, the motion was granted, and we appealed. That was not raised until the briefs in this appeal, that we couldn't use that as a basis for the retaliation. When exactly did the no conference vote take place? It's unclear on the record. October 2008. October 2008? And when did Diaz learn about it? I think she would have learned about it upon the press release, at the latest. When was the press release? October 2008, contemporaneous with the vote. Either that day or the next day, but it seemed like it was very close. I would expect that it was, I don't know exactly whether it was that day or the next day, but it was, I think it was all one, it was contemporaneous with the vote. I think once the vote's taken, the goal is to get the word out there. But she was undoubtedly aware of it, and then it was several months later when he submitted the post-certification. What is the basis for your Monell claim? The chief runs the department. The chief is the policymaker for the department. The city asserts that under the municipal code, that the city manager runs the day-to-day affairs of the city. In effect, the city's saying you can legislate away Monell liability merely by what's stated in the municipal code. But the chief in her declaration asserts that she oversees, directs, does strategic planning, coordinates. She runs the department. What role does the city manager have in that? I think that the city would be able to answer that question better. I don't think that the city manager has much of a role in it. She submitted a declaration in support of the city's motion for summary judgment, and I didn't, in fact, I looked this morning to see if there's anything as to her involvement in running the police department, and I really don't see any other than hiring the chief. As a practical matter, does the existence or non-existence of a Monell claim make any difference? Well, it makes a difference. Were you to prevail against the chief? Well, as far as where, who damages and where would the money come from, maybe not, but it still puts the city on the hook for liability. Well, they're still, practically speaking, in California, they're on the hook for any liability against the chief. Sure. Sure. So where did the district court go wrong besides the issue that you started off with? The substantial motivating factor? Well, I think the other issue where the court made a mistake was determining that the speech was as a public employee and not as a private citizen. The Garcetti issue.  I think that the court overreads Garcetti. Yes, he's in the union because he's a public employee. That's the only reason he's in the union. And then whatever position he is in the union, I guess, doesn't matter. Okay, he's the president. But that's not part of his official duties as a police officer. And in fact, if, and his duties in the union and the existence of the union, while in some way it may owe its existence to his position as public employee status or any member's status, the union itself is a private organization. The activities that the union undertake are inherently First Amendment activities. The collective voice, redress to the government. And if the court's holding is correct, the district court's holding that because he was a member of the union and its president, that that's part of his official duties as a police officer for the city of Sierra Madre, then no union activity would be deemed protected speech because all public employee unions owe their existence to the fact that they're public employees. Are the police officers required to be members of the police association under the Memorandum of Understanding? I think the positions are part. If you're in a certain position that's covered by the MOU, yes, you're automatically in the union. And you have to pay your dues and all that. You have to pay dues. But even the municipal code says, and California law says, that employees have the right to join, not join, I guess unless it's agency shop. That's not my area of expertise, though. Have the right to form, join, not join unions for the purpose of collective bargaining, for all the purpose that a union traditionally is formed for. And the municipal code also says, and California law says, that you can't be discriminated, retaliated against for union activities. So I think there's some kind of circular reasoning. While I understand the court's thinking, the district court's thinking and reasoning, I disagree. I think it goes too far in saying that union activity, because of what I understand the court to be saying, because it owes its existence to public employment, is therefore not protected. It just, that would be the end of it. Well, the union is inherently in conflict with the management. That's right. I mean, there's an inherent tension in the union and its activities with management. And that situation is ripe for retaliation and First Amendment expression. And if the district court's holding us correct on this issue, that would be the end of a very important factor in the labor force. But aren't there remedies in the context of employee-employer labor relations, so that you don't have to resort to First Amendment protections if there's retaliation due to participation in labor activities? There may be state statutes that protect such activity, but not state, but there wouldn't be federal constitutional rights. I mean, this takes Garcetti another step. This is creating new law with the district court. I'm just saying, if he's speaking as an employee as opposed to a private citizen, there still would be an avenue to prevent retaliation as a public employee. And to redress it. Right, to redress it. There are some state statutes. I think Labor Code Section 1102.1 and maybe some others. But I think the standards of proof may be different. The case law may be different. Did you raise any state law claims here? I don't believe that the state law claims were raised. I was just addressing your intimation that if the employee were considered to be speaking as an employee, it would totally deprive him of his rights. And if there are state avenues of redress, that wouldn't be totally accurate. That's right. That wouldn't be completely accurate, but it would forbid redressing First Amendment rights. And I think that's pretty important. Yeah. There's just kind of a conflict between the public employee implication as opposed to private citizen. And I guess the district court thought the plaintiff was speaking more as a public employee than as a private citizen. And that's the dilemma we have to confront, I guess. But if you look at the reasoning in Garcetti that someone was just doing their job, and the only reason that they engaged in this speech and what would otherwise be protected under the First Amendment was because they were doing their job, like Garcetti was doing his job. And I guess Garcetti was, too. They do it on behalf of their employer. They're doing it at the behest of their employer. And so why should they be able to – not that I agree with this at all. In fact, I disagree with the Garcetti decision. But my understanding is why should they be able to now assert a First Amendment claim when they're really just doing their work? But that's not what's going on here. Well, here's the problem. I used to represent the police department in a former life. And the people who were the union representatives, you know, they got time off their jobs to be the union representatives. They were paid their salary. You know, they weren't required to do it after hours. So it's kind of a blurring of private citizen versus public employee, because the union representatives were really compensated for being union representatives as opposed to being police officers. So that was their job as police officers to represent the police with the employers. And so when they were speaking as union representatives, they were doing their job. Well, that would be a factual inquiry for one thing. Was that the case here? You know, I don't know the answer to that question. I mean, if he was being disciplined for not arresting someone or some of his conduct as a police officer, he had to be doing a police officer job, right? That's certainly true. I don't know the answer to whether he was serving full time as the association president. If this is one of those cities and being paid to do that. I do know what you're talking about, Your Honor, that there are some employees that leave time to conduct union business. I'm not sure if I'm familiar with instances where they do absolutely no peace officer work and are paid by the employer. What's in this record? Mostly motion, paperwork, declaration. What does it say his job is? He is a peace officer and he is the associate. And at the time he was the association president. I had not contemplated Judge Rawlinson's question. Well, there's no affidavit by the city manager or anybody, the chief of police, that says that at the time of all this was taking place that he wasn't working as a police officer. He wasn't performing peace officer duties. No, in fact, during some of this time he had been disciplined and served a suspension and certain acts took place contemporaneous with the union activity. In the record it shows that he was at briefings. So he was doing peace officer work. There's nothing in the record to suggest that he was one of those, do I want to say lucky few, who were doing union stuff and getting salary from the city. That's right. But that was my other big concern with the court's ruling, whether the speech was a substantial motivating factor and whether the union activity was considered public, speech as a public employee or private speech. I think I ought to reserve the balance of my time. You're over your time. Yes, the red light means time. Oh, so the 127 is over? Yeah, you went over your time.  Okay. Good morning, Your Honors. My name is Elizabeth Kessel, and I'm here representing the city of Sierra Madre and Chief Marilyn Diaz. The issue here actually has to do with whether or not the plaintiff, or Officer Ellens, leading a no-confidence vote against Chief Diaz led to an adverse employment action, that is retaliation against him by Chief Diaz, in delaying in actually signing the application for an advanced post certificate. That's what the issue is. Do you assert that he was acting as a public employee? Yes, I do. Okay. And what do you base that on? Well, I base it on his deposition testimony, and I base it upon what the record shows, and that is that he was the president at the time of the Sierra Madre Police Association, and he was actually doing official duties. In leading the no-confidence vote, he was doing his official duties in that capacity. And that no-confidence vote, as he explained in his deposition, was actually initiated by the members of the association, and he, in fact, led the vote because of the desire of the members. He testified in his deposition that since he was the president, he went ahead and did it because that's what the members wanted. So I would take a look at it this way. What would he be doing if he were a private citizen? In this particular case, we have to take a look at the combined elements of whether or not this was protected speech under the Eng v. Cooley standard, and that would be whether or not he was a private citizen, in which case the speech would be protected. It would not be if he was a public official or working in his official capacity. And the other is, what were the issues of public concern, and were they indeed issues of public concern? Roberts. Sure. The performance of the chief is always public concern. Well, not necessarily in this particular case. Why not? Because in this case, the performance of the chief that was discussed in the – that led to the no-confidence vote, according to Mr. Ellen's own testimony, was that it had to do with the scheduling of a dispatcher. It had to do with whether or not she was observing various provisions of the Memorandum of Understanding with the police association. It was all personnel matters, and it was not necessarily matters that had to do with political, social, or community concerns. Was there one particular officer that was the center of the no-confidence vote? There was no testimony with respect to that. The only testimony that we had in the record was what Officer Ellen said himself. And he's the one who said that he had had disagreements with Chief Diaz, and in fact, based upon his disagreements with Chief Diaz, he actually went to his law firm, and whenever he felt that the rights of the members of the association had to be in some way addressed, he would go to the law firm. So everything that he had discussed in his deposition had to do with strictly personnel matters relating to what the police officers would – what happened internally in the administration of the police department. There was nothing specific. Well, I think the no-confidence vote is a pretty strong statement that police – the policing activities in Sierra Madre may not be up to snuff with the chief's leadership. Yes, Your Honor. In this case, the no-confidence vote was something that was determined, was permitted under the bargaining association memorandum, and there were disagreements with Officer Ellen as to what Chief Diaz was doing in performing under the memorandum of understanding. We're on summary judgment. And I think – I mean, the declaration says that – I guess this is Ellen's declaration – that the vote of no confidence was due to Chief Diaz's lack of citizens' tax dollars, hypocrisy, expensive paranoia, damaging inability to conduct her job. And then the press release lists examples of her lack of leadership and ability and wasting taxpayers' money with various policies that she's instituted. To me, that's talking about her performance as the police chief and whether she's up to snuff as the police chief overall. Your Honor, the press release was never submitted into evidence. And, in fact, it couldn't be considered. The declaration says what was in it. I mean, there is evidence of that. That's true. Why do you take a no-confidence vote? Well, Your Honor, if I may – What's the significance of a no-confidence vote? If I may address your first question, why is it in the declaration? In fact, we objected to that declaration because the declaration impeached the testimony in the deposition itself. In the deposition itself, Officer Ellen said, and it's in supplemental excerpts on page 131, Officer Ellen said that he would go back to Lackey, DeMeyer, McGill, which was the law firm that represented the – There's one part of the deposition. In another part of the deposition, he says that they took the no-confidence vote because the members were upset about how Chief Diaz conducted herself as chief. And that is correct. And then he elaborated on that in the other part of the deposition where he said that the problems that they had were that Chief Diaz arbitrarily changed the scheduling for dispatchers, which is a personnel issue, that she illegally searched through officers' lockers, which was not only a personnel issue but also an issue that would be handled through the regular procedures, administrative procedures in the Collective Bargaining Associations Agreement. In addition, that without warning, she did not sign Officer Ellen's advanced post certificate. So when he elaborated on the reasons that they were taking the no-confidence vote, and, Your Honor, I'm in total agreement that a vote of no confidence generally has a meaning that does address public concerns, and we know that there's case law where public concern can be the subject of a no-confidence vote. But in this case, it wasn't. But how is the deposition inconsistent with his declaration? If he adds on reasons in his declaration, he was responding to the questions that were posed to him at the deposition. And so in his declaration, if he adds on something that does not directly contradict what he said, how is that then inappropriate? It's inappropriate, Your Honor, because there was no evidence supporting it. All we had was the declaration, which now added on to, and in a significant way, to the testimony that he gave in his deposition. But there was the vote itself. Are you disputing that the vote took place and that the press release was issued? No, not at all. We're not disputing that. That's not evidence? Well, we've never seen the press release, Your Honor. What do you mean, we've never seen it? It was never submitted into evidence. But you yourself testified she read it and was disappointed. She was disappointed that there was even a vote of no confidence, because vote of no confidence. Who's we? Who's we that never saw the press release? We just saw it. The press, well, it's the court at the trial level that never saw the press release. And in that particular case, that would have been a significant piece of information to see what it actually said. I suppose someone could go on the Internet and get it. Well, no one did. Or it was not there. I don't think it's that important. But Diaz saw it. In any case, it would be important, obviously, to whether this was an issue of public concern or not. Well, if you would agree that the declaration should properly be admitted, you don't have to accept that. But if we assume that the declaration was properly before the court and the declaration said there was a waste of taxpayer money, would that be a matter of public concern? If there is, yes, Your Honor. A matter of public concern would be something that would affect the community. And wasting taxpayers' money is always a matter of public concern. The problem here is that that was not supported by anything except that declaration. But does it have to be for summary judgment? If he says the reason we voted, gave a no confidence vote, was because, in our view, she's wasting the taxpayers' money. So why wouldn't his opinion be a matter of public concern? If that's their opinion, do they have to have evidence to support that in order for their to survive summary judgment? Your Honor. The declaration's not enough? Your Honor, I think if there was evidence to support it, it should have been presented before the trial court, because obviously that would have been part of the court's determination. But the matter of whether or not the issue was a public concern, and again, we objected to that declaration on the basis that it was the only piece of evidence that was coming in, and it did not necessarily support what the initial testimony was of the plaintiff at his deposition. But that wouldn't be the only matter that would make this protected speech. Did the district court strike it? Did the district court strike it? I don't recall that the court made a ruling on that objection. Say anything. Excuse me? Didn't say anything. I don't believe so, except that the court did. Well, she would have had to have found it was a sham declaration under our case law. It's not in the order, Your Honor. I don't see anything that, you know, characterizes this declaration as a sham declaration. Well, except for in our argument. But other than that, the court made the ruling that this was not a matter of public concern based upon the test the evidence before it. Also, the court made a ruling that there was no admissible evidence showing that a plaintiff was a private citizen, that he was a private citizen. So basically, the court made rulings based upon looking at the evidence on every single one of the elements to determine whether or not there was protected activity here. And, Your Honors, on the question of the substantial and motivating factor, whether or not the speech was a substantial and motivating factor, I would like to add something to my colleague's argument. And that is that the reason that Chief Diaz delayed in signing that application was because she did not believe that she could honestly sign a declaration that said that this officer was of good moral character and that he was worthy of this award and that personnel ---- The evidence. There's another side of the evidence, that that wasn't the reason. And my problem with this grant of summary judgment, and particularly on that issue, is that it seems to me that the district court became the trier of fact and not ---- And that there were disputed facts in here, and the district court was deciding the facts. And I think that's problematic on summary judgment. Well, in this particular case, one of the things that was not mentioned was that there was this criminal investigation that was before the DA at the time. Right. And that's another allegation that ---- I mean, who referred it to the DA? Diaz. She did. But ---- And then there was no charges presented. So, to me, that's further evidence of retaliation. But she also submitted it to the DA before this vote of no confidence. There was no evidence before the court that there was retaliation based on the fact that she submitted it to the DA. And, in fact, the factors that led her to submit this evidence to the DA were serious enough factors, and it was evidence that was provided to her from a police chief in another area. So she was bound to submit that to the DA. It seems to me you're arguing the facts again. Your Honor, on the factor of the substantial and motivating factor, what the trial court had to do is determine whether or not there would be any reasonable inference. And, in fact, the trial court cited the Antoine case in terms of what the trial court was looking at in determining whether or not summary judgment could be granted on that issue. And in that case, the court said that to show that retaliation was a substantial and motivating factor behind an adverse employment action, a plaintiff can, one, introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech. And in that case, the court did not find it to be true because of the fact that the charges were provided to the DA in October prior to the vote of no confidence being actually voted upon. Number two in these factors is introduce evidence that the employer expressed opposition to the speech, and there was no evidence that there was any opposition to the speech. In her deposition, Chief Diaz said that she expressed disappointment because she thought that this was a matter that should have been discussed with her rather and it never was. It was never brought to her attention under the usual proceedings where the president of the police association would go to the chief and say this is what we have a complaint about. That was never done. It was just in the vote of no confidence. And the third element in the Antoine case that the district court considered was that to introduce evidence that the proffered explanations for the adverse action were false and pretextual. And in these circumstances, the court did not find that there was any evidence that was introduced by the plaintiff, no evidence whatsoever that these were false and pretextual. The pretext be drawn from the fact that she later no, nothing seemed to change and she later did submit the post increase. But something did change. And that is the lawsuit. No, no. It was something else. She hoped the lawsuit would go away. Isn't that in the evidence? No. There was something else, Your Honor. And that is that. Wait. Is it. Did she not or did she testify that she submitted the post thing with the hope that the lawsuit would go away? Yes or no. I don't believe so, Your Honor. I can check the record, but I don't believe that that was. That certainly was not the reason. If she testified that that was part of her thinking, that's fine. But the reason, and she testified to this very clearly, was that she was waiting. She had to sign off that she believed that this officer was of good moral character. And at the time, in addition. But if she didn't believe it in February, why did she believe it in December? Because at that time, she received word from the DA that they were not going to file criminal charges on that DA investigation. She waited for just a little while. She received oral communication from the DA that they were not going to file charges. And therefore, and she asked the DA to give her something in writing saying you're not going to file charges. That way she could have it done. Okay. She did what she needed to do. The DA was not going to go further. But when she didn't get the DA's written verification that they were not going to file charges, she just went ahead and signed it. Because she knew orally that they were not going to file charges. And that is a critical matter. What were the circumstances that led her to refer the matter to the DA? I'm sorry? What were the circumstances that, what was the incident that she referred to the DA? There were, there was a information that she received from another police chief that the plaintiff, that Officer Ellens was involved in the sale and use of anabolic steroids. There was an incident of sexual misconduct in stopping a car on the road. Did she initiate her own disciplinary action in those circumstances? She took those matters and referred them to the DA. But she didn't initiate any. I don't. She didn't say you're on an administrative leave until this is resolved by the DA? No. And, in fact, at that point in 2008. Could she have done that? When she referred the matter to the DA, could she have said, I'm also placing you on administrative leave until these charges are thoroughly investigated? I believe she could have. She didn't do that? She did not do that. I believe she could have done that. He was actually on suspension after an internal administrative review of another complaint that he had at the time, and that was that he had stopped a suspect that had marijuana in the car and also some marijuana paraphernalia, and he let the suspect go. And in addition to that, he did not confiscate the marijuana. And it was a citizen complaint. How did that turn into an incident? How is it that that particular incident turned into a disciplinary measure? Well, that was there was discipline based upon that following a citizen's complaint. So it had to be investigated by internal affairs. It was investigated. And, in fact, Officer Ellins then appealed the substantiating of the substantiation of those findings, and thereafter, there was a suspension imposed, and Officer Ellins actually did serve that suspension. Counsel, was there any evidence in the record regarding whether Mr. Ellins was working on his own time when he was doing union activities or whether he was on leave? There's nothing in the record.  There's nothing in the record on that. At all times, he was actually working as the president in his official capacity as the president of the union. Right, but there's nothing in the record saying he was on leave or he was being paid as a police officer while he was doing that. There's nothing in the record to that effect. While he was working on his union activity? Yes. Yes, there's nothing in the record on that. All right. Counsel, you're well over your time. So thank you. Thank you. The case of Ellins v. Sierra Madre will be submitted in this court. We'll adjourn for this session.
judges: Wardlaw, Paez, Rawlinson